UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| ROSIE M. ARNOLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:11-00126 |
| FEDERAL-MOGUL PRODUCTS, INC. ) | Judge Sharp |
| and DEBBIE HITCHCOCK, ) | |
| individually, ) | |
| ) | |
| Defendants. ) | |

## ORDER

In this action under the Family and Medical Leave Act and the Americans With Disabilities Act, Defendants[1] have filed a Partial Motion for Judgment on the Pleadings (Docket No. 15). By way of that Motion, Defendants seek dismissal of Plaintiff's disability discrimination claim because it allegedly was not raised in a timely filed Equal Employment Opportunity Charge.

Defendants argue that the last act of alleged discrimination occurred when Plaintiff was discharged from Federal-Mogul on February 10, 2010, and, because Tennessee is a deferral state, Plaintiff was required to file a charge of discrimination within 300 days of that date. She did not do so, but instead waited over a year to file her EEOC charge on April 4, 2011. Defendants also assert that, even if Plaintiff's Intake Questionnaire is considered to be a charge, it, too, was late because it was not received by the EEOC until December 8, 2010, 301 days after her employment with Federal-Mogul ended.

Plaintiff concedes all of the foregoing, with one major exception. She asserts that the EEOC

---

[1] At the time the case was filed, Defendants included not only Plaintiff's former employer, Federal Mogul, but also Debbie Hitchcock, its Human Resources Representative. Since that time, Plaintiff has voluntarily dismissed her claim against Ms. Hitchcock (Docket No. 23).

1

received the Initial Charge not on December 8, 2010, but the day before, when it was faxed to the agency. As such it was filed within the 300 day window.

"Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." Parry v. Mohawk Motors of Michigan, Inc., 235 F.3d 299, 209 (6th Cir. 2000) (citing, 42 U.S.C. § 12117(a); 42 U.S.C. § 20003-5(e)(1)). Under the regulations, a charge is "deemed to be filed with the Commission upon receipt," and this has been held to include receipt via facsimile. See, Edelman v. Lynchburg College, 535 U.S. 106, 118-19 (2002) (sending facsimile letter to EEOC within 300 days could relate back if facsimile met the statutory requirements of a charge); Laouini v. CLM Freight Lines, Inc., 586 F.3d 473, 479 (7th Cir. 2009) (holding that relevant regulations do not prohibit filing of charge by facsimile and "local agency's interpretation permitting charges of discrimination to be lodged by fax is reasonable"); Redd v. 7-Eleven, Inc., 2013 WL 85178 at *3 (E.D. Va. Jan. 7, 2013) (citation omitted) ("the Court has reason to believe that [plaintiff] may have filed a timely EEOC charge of discrimination, based on her fax to the EEOC" because "[i]nformal though it was, governing law makes clear that the charge could subsequently 'be amended to cure technical defects or omissions'").

The foregoing is for naught, however, if the Intake Questionnaire is not considered to be a charge. In Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008), the Supreme Court considered whether an EEOC intake questionnaire and accompanying affidavit was a "charge" for the purposes of time limitations in the context of an age discrimination claim. In holding that such documents could be properly considered a charge, the Supreme Court wrote that "[i]n addition to the information required by the regulations, i.e., an allegation and the name of the charged party, if a

filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Id. at 402.

In this case, Plaintiff's Intake Questionnaire met the requirements of Holowecki. It contained her full name, address, and telephone, as well as the name, address and size of her employer; it alleged that she had a disability and that she "was assessed points, penalized, and discharged for absences caused by [her] disability"; it explained that she was disciplined on December 2, 2009, and discharged on February 10, 2010; it identified the managers and supervisors allegedly responsible for her discipline; and it explained that she had high blood pressure that limited "[c]irculatory bodily function, performing manual tasks, seeing, eating, sleeping, walking standing, lifting, bending, learning, reaching, concentrating, thinking and working." (Docket No. 16-2). Further, Plaintiff specifically heeded the admonition that if she wanted to file a charge (as opposed to "talk[ing] to an EEOC employee before deciding whether to file a charge") she needed to check box 2 which read:

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

(Id. at 4). That the EEOC understood a formal charge was to follow was made clear in a letter from Sarah L. Smith of the EEOC to Ms. Hitchcock three days later on December 10, 2010. (Docket No. 17-2 at 1).

In making the determination that the Initial Charge and its faxing to the EEOC were sufficient, the Court fully recognizes that Holowecki dealt with an ADEA claim, and also that the

3

Supreme Court made clear its holding was not to be applied woodenly to all discrimination claims. Rather, courts should "be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." Holowecki, 552 US. at 393.

Such a "careful and critical examination" of Holowecki's applicability to ADA cases was undertaken by the court in Price v. City of New York, 797 F. Supp.2d 219 (E.D.N.Y. 2011). There, the court observed:

> The court has carefully and critically examined 29 C.F.R. § 1601, the regulations that apply to both the ADA and Title VII. This set of regulations bears substantial similarity to the ADEA regulations at issue in Holowecki. See 29 C.F.R. § 1626. The most relevant difference between the ADEA and ADA/Title VII regulations concerns the stated requirements regarding the form of the charge. The ADEA regulations state: "A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing." 29 C.F.R. § 1626.6. By contrast, the ADA and Title VII regulations require that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. With this distinction in mind, the court finds the permissive standard announced in Holowecki applicable here.
>
> Decisions of other courts support this same conclusion. The court is aware of no decision within this Circuit that has considered whether the Holowecki standard extends to the ADA. But a number of courts in other jurisdictions have applied this standard in ADA cases. See, e.g., Steiner v. Prof'l Servs. Industr., Inc., CA. No. 08–723, 2009 WL 2950755 (W.D.Pa. Sept. 9, 2009). Similarly, federal courts in this Circuit have frequently applied Holowecki in assessing the timeliness of charges in Title VII cases. See, e.g., Winston v. Mayfair Care Cntr., Inc., No. 09 CV 4792(ARR)(LB), at *7 n. 1 (E.D.N.Y. Mar. 4, 2011) (unpublished decision and order) (collecting cases and noting that "because the EEOC's regulations setting forth the basic information required of a charge are almost identical under both [the ADEA and Title VII], federal courts have consistently applied Holowecki in the Title VII context"); Broich v. Inc. Vill. of Southampton, No. CV–080553 (SJF)(ARL), 2011 WL 284484, *6–7 (E.D.N.Y. Jan. 25, 2011); Morrow v. Metro. Transit Auth., No. 08 Civ. 6123(DLC), 2009 WL 1286208, *5 n. 6 (S.D.N.Y. May 8, 2009); Simpson v. City of N.Y. Dep't of Hous. Pres. & Dev., 08 Civ. 0185(SHS)(KNF), 2009 WL 996388, *5–6, 2009 U.S. Dist. LEXIS 58766, *16–19 (S.D.N.Y. April 13, 2009). These cases are instructive here because, as the same regulations govern both Title VII and the ADA, no distinction in the relevant regulations can counsel for a different result as to ADEA cases.

Id. at 225-226: see, Evans v. Excellus Health Plan, Inc., 2012 WL 3229292 at ** 4-5 (N.D.N.Y. Aug. 6, 2012) (citation omitted) (relying on Evans, holding that Holowecki applied to ADA claims, and noting that "since Holowecki, the 'EEOC has changed the form' to require claimants to check a box to clearly express if they request the EEOC 'to take remedial action'"); Stewart v. SEIU United Healthcare Workers-West, 2012 WL 1357633 ** 2-3 (N.D. Cal. April 1, 2012) (applying Holowecki to Intake Questionnaire in ADA case). This Court likewise agrees that Holowecki is applicable to cases alleging disability discrimination under the ADA.

The Partial Motion for Judgment on the Pleadings (Docket No. 15) is hereby DENIED.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE